RAWLS, JOHN S., Associate Judge.
Plaintiffs below appeal a final judgment entered by the trial judge in post-trial proceedings had upon defendant’s motion for judgment notwithstanding the verdict and motion to set aside verdict and judgment and to enter judgment in accordance with defendant’s motions for directed verdict.
We are here concerned with a bicycle colliding into an automobile. Plaintiffs pose their sole point on appeal as:
“Where defendant, on a rainy day, was driving in wrong lane in order to pass a car within forty (40) feet of an intersection, and was traveling from twenty-five (25) to forty (40) miles per hour, there was competent substantial evidence from which the jury could infer that the defendant’s negligence proximately caus *597 ■ed a collision with the plaintiff, who was riding a bicycle in his proper lane of traffic.”
A review of the point on appeal necessarily requires an examination of the evidence construed most favorable to supporting the jury’s verdict for plaintiffs. Deese v. White Belt Dairy Farms, Inc., Fla.App.1964, 160 So.2d 543. On a drizzling rainy morning, Jeffrey Tranter, a five year old boy, mounted a bicycle and followed his nine year old brother, James Tranter, .and a friend who were riding “double” on .another bicycle for a short trip in their residential neighborhood. James Tranter and his friend rode south on Northwest Third Avenue a short distance to the intersection of Third Avenue and Northwest Eleventh Street which runs east and west in Delray Beach, Florida. Third Avenue dead ends into Eleventh Street and a traffic sign with the symbol “Yield” was posted on Third Avenue. Eleventh Street had a posted speed limit of 25 miles per hour. According to James, he turned west, propelled his bicycle on the right hand side of Eleventh Street, and occasionally looked back to see if Jeffrey was in sight.
At this point, Defendant Wible entered the scene. He departed his home on Fourth Avenue in his Chevrolet automobile and drove south a short distance on Eleventh Street where he turned east. At that time Wible was approximately 300 feet from the intersection of Third Avenue and Eleventh Street. James testified that Wible was following a “baby” Volkswagen, which he passed. A few seconds thereafter James heard a “* * * rumbling sound * * * like a scraping on the ground.” Plaintiff Jeffrey, a kindergarten student whose mother testified that he did not know how to read and she doubted if he knew what “yield” meant, was riding south on Third Avenue at the time James turned on Eleventh Street. Jeffrey did know how to ride a bicycle but according to James, he ■“ * * * could not stop very well” — “was * * * still sort of learning” — “didn’t know how to use the brakes” and stopped by “drag[ging] his feet.” Jeffrey entered Eleventh Street without stopping and traveling a little fast, made a wider than normal turn, at which point he collided with the left side of the Wible automobile which was from 2 to 3 feet to the left of an imaginary center line of Eleventh Street. Wible did not see Jeffrey prior to hearing something hit the side of the car. Jeffrey was severely injured.
 The testimony as to speed is important. Mr. Wible testified that he didn’t think he “ * * * acquired a greater speed of more than fifteen miles per hour” and “ * * * did not accelerate rapidly after turning corner” and “ * * * may have been going as much as 25 miles per hour.” Mr. Pike, an eyewitness, testified that Wible was traveling “ * * * I imagine 20 or 25 miles per hour.” The only other witness to testify as to the speed of Mr. Wible’s car was a Mr. Puryear, who was parked on Third Avenue approximately 100 to 125 feet north of the accident intersection. As Jeffrey approached the intersection, witness Puryear began driving his automobile from the curb in a southerly direction behind Jeffrey. Puryear testified that Jeffrey did not stop at the intersection, was traveling a little fast and made a wide turn. With reference to the speed of the Wible car, Puryear testified that he saw the Wible car and watched it travel about 80 feet prior to impact. When he was then asked, “Could you estimate the speed of the Wible Car?”, he responded, “No.” On cross examination, Mr. Puryear was again asked about the speed of the Wible car, viz.:
“Q Did I understand you to say you would not testify as to the speed of the Wible automobile?
A No, I will not testify.
Q Or to the bicycle?
A No. All it would be is pure speculation.
*598 [Objection made and overruled]
A No. All it would be is purely speculation. Now, that’s a broad statement. Generally speaking, I could say the car was going between 25 and 40 miles per hour, but in other words, he wasn’t going 70 miles per hour. He was between 25 and 40 miles per hour.”
It is upon the foregoing testimony that plaintiffs predicate the factual statement in their point on appeal to the effect that Wible was traveling from 25 to 40 miles per hour. Such a conclusion is supported solely by the quoted answers of the witness Puryear, who had initially stated he could not estimate the speed of the Wible car and any estimate he made would be purely speculation. Puryear’s subsequent "speculation” of a speed of 25 to 40 miles per hour was without any reasonable foundation. Such speculative testimony is not evidence upon which a jury can rely. Plaintiffs clearly failed to adduce any substantial evidence upon which the jury could have decided that Wible was operating this automobile at an excessive rate of speed.
A jury’s decision must have a rational predicate in the evidence and cannot rest on mere whim, guess work or suspicion. The evidence should show a natural sequence of events based on facts from zvhich liability can be inferred. 13 Fla.Jur., Evidence, § 410. Here, at the conclusion of plaintiffs’ case, in acting upon defendant’s motion for directed verdict, the trial judge stated:
“Plenty of room to accommodate a bicycle coming around that corner. You[’ve] got a mighty weak case. I think I will let it go to the jury, but it doesn’t seem like a very strong case to me. I don’t know what this man did wrong as far as that boy was concerned. Little fellow— seems to me it might have been entirely his fault.
“But I will reserve ruling on it. Let’s see what this jury is going to do with it. Reserve ruling.”
It is our conclusion that the trial judge-should have granted defendant’s motion for directed verdict at the end of plaintiffs” case, and that he erred in submitting the cause to the jury. Further, that the trial judge corrected his initial error in the post-trial proceedings wherein he concluded that:
“Negligence in every case involves a. foreseeable risk. Mischief which could by no reasonable probability have been¡ foreseen, and which no reasonable person would have anticipated, cannot betaken into account as a basis upon which! to predicate a wrong. Notwithstanding-that defendant at the time may not have been entirely in his lane of traffic, it is-not reasonable to say that he should have foreseen that a child would enter the intersection from the ‘yield’ street on a bicycle which he could not or would not stop until it had struck defendant’s automobile.
“The evidence upon which the jury has found that defendant’s negligence was the proximate cause of the child’s injuries, does not meet the test of substantial evidence.”
The judgment appealed is affirmed.
ANDREWS, Acting C. J., and WALDEN, J., concur.