COPE, J.
Romulo Padilla appeals an order granting a new trial requested by the defendant, BIV Investments and Management, Inc. The trial court granted the new trial on the theory that the plaintiff had violated an order in limine. As we conclude that a new trial should not have been granted, we reverse the order now under review and remand with directions to reinstate the jury verdict in favor of plaintiff Padilla.
I.
The plaintiff was hired by defendant BIV Investments and Management, Inc., to serve as construction manager for an office building located at 1101 Brickell Avenue, in Miami. BIV was a subsidiary of, and served as the management company *350 for, INBIVEN.[1] INBIVEN in turn was owned by Banco Industrial de Venezuela. Banco Industrial was owned by the Venezuelan government.
Corporate management made a decision to sell the Miami office building. The plaintiff agreed with that decision but believed that the proposed method of sale would result in the company receiving an inadequate price for the office building.
Plaintiff sent a letter to the manager of INBIVEN, outlining his concerns about the proposed sale. He sent copies of the letter to the Venezuelan Minister of the Treasury, the president of Banco Industrial, and the members of the BIV Board of Directors.
Plaintiff was summoned to Venezuela for a meeting with the heads of INBIVEN and Banco Industrial. By plaintiffs account and the testimony of several company employees, plaintiff was fired.
Plaintiffs counsel sent a letter demanding that the plaintiff be paid the balance he was owed for the remaining term of his written employment agreement. BIV responded in a letter stating that it had only removed the plaintiff from his positions as secretary and treasurer of BIV but that the company had not fired the plaintiff from his position of construction manager. BIV demanded that the plaintiff return to work. The plaintiff refused and filed suit, for breach of the employment contract.
BIVs first line of defense was that it had never fired plaintiff from his job as construction manager at all, and therefore had not breached the employment contract. BIV recognized, however, that its own employees would contradict this; BIV had told its employees that the plaintiff had, in fact, been fired. Further, BIV had canceled the plaintiffs health insurance immediately after the meeting in Venezuela because plaintiff was no longer an employee.
BIVs alternative position was that its letter to plaintiffs counsel was a bona fide offer to reinstate the plaintiff to his original position. BIV argued that the plaintiff had unreasonably failed to accept reinstatement.
The plaintiff countered that special circumstances in this case made it unreasonable for him to accept reinstatement. Plaintiff contended that the company had triggered a Venezuelan congressional investigation of him and his father, and that the circumstances would have made a working relationship impossible. Further, the plaintiff argued that BIV had never offered to reinstate him to his positions as secretary and treasurer of BIV.
The case proceeded to trial and the jury returned a verdict for plaintiff on his claim that BIV breached the employment contract. The court granted a new trial, finding that “counsel for Plaintiff violated this Court’s pretrial order granting Defendant’s motion in limine to exclude certain evidence.” The plaintiff has appealed the new trial order.
BIV has cross-appealed, contending that it was entitled to a directed verdict. BIV argues that plaintiffs refusal to accept the offer of reinstatement bars him from any recovery.
II.
Because of plaintiffs, letter protesting the proposed sale of the office building, the proposed sale became a public controversy in Venezuela. A governmental anti-corruption committee initiated an investigation. The parties describe the anti-corruption committee as a sort of special prosecutor.
*351 At the outset of trial BIV filed a written motion in limine. BIV asked the court to preclude the plaintiff from introducing any evidence “[t]hat the Venezuelan Government convened an ‘anti-corruption committee’ to investigate the proposed sale of the BIV Towers.” BIV argued that any testimony about the anti-corruption committee could create “a general impression that there was some form of corruption in connection with the proposed auction [of the office building],” and that the “prejudicial effect greatly exceeds its probative value.” If the jury were told that BIV had been investigated by the anti-corruption committee, the jury might draw the conclusion that BIV or its management was corrupt. The court ruled that the anti-corruption committee was not to be mentioned.
There was, however, another investigation to be considered. Plaintiff testified that after he objected to the proposed sale of the office building, BIV and its parent companies retaliated by instigating a Venezuelan congressional investigation of the plaintiff, his management of the Miami office building, and plaintiffs father, who had been a member of the board of directors of INBIVEN. Unlike BIV (which wanted to exclude evidence that BIV had been investigated), plaintiff did want to bring out the fact that he and his father had been investigated. In plaintiffs view it was necessary for the jury to know about the investigation of plaintiff and his father in order to understand why plaintiff had refused the offer of reinstatement.
During the hearing, the plaintiffs counsel summarized the order in limine as follows:
As far as the anticorruption, I am not to mention the anticorruption committee. [Plaintiff] was investigated and that is part of the evidence that we need to refute from the defense, but I don’t have to mention the anticorruption committee if that is the Court’s ruling.
THE COURT: That is my ruling.
BIV also asked the court to preclude any testimony that the plaintiff was defamed or slandered in Venezuela or Miami. The plaintiff had originally filed defamation claims, but had dropped them. On that issue, the court was dubious that the plaintiff would be able to offer any evidence that would not be subject to a hearsay objection. The court ruled that there could be no mention of press reports about the controversy in the opening statements. With regard to the testimony of witnesses, the court stated that it would rule on any specific objections that the defense might make.
III.
In reviewing an order granting a motion for new trial, we are governed by the abuse of discretion standard. Brown v. Estate of Stuckey, 749 So.2d 490, 497-98 (Fla.1999). Under the circumstances present here, the trial court exceeded the bounds of discretion in ordering a new trial. As can sometimes occur in the context of an oral ruling, over several days of trial the court lost sight of the terms of the order in limine and the reasons for its entry.
BIV successfully argued in its motion for new trial that it was a violation of the order in limine for the plaintiff to elicit testimony that the plaintiff and his father had been the object of an investigation by a member of the Venezuelan congress. But such testimony did not violate the order in limine at all. The order in limine did not preclude the plaintiff from showing that he had been the object of an investigation. The order in limine forbade any mention of the fact that BIV had been the object of an investigation by the anti-corruption committee. Further, the anti- *352 corruption committee was not to be mentioned by that name.
When the plaintiff was testifying in his case in chief, his counsel asked him about the investigations of himself, his job performance in Miami, and his father. BIV never objected that this testimony violated the order in limine. BIVs only objections were that some of the questions were leading or called for hearsay testimony.[2] Thus, the plaintiff testified — without objection and consistent with the order in li-mine — about the investigation that had been directed at him.
Later, in the cross-examination of Mr. Arnal, the president of BIV, plaintiffs counsel asked Arnal whether he had contacted a Venezuelan congresswoman and told her that he had a corruption file on plaintiff Padilla. BIV objected that this question violated the order in limine. The judge sustained the objection and admonished plaintiffs counsel in front of the jury. In reality, however, this question was entirely permissible under the terms of the order in limine.[3] The fact that BIV told a Venezuelan congresswoman it had a so-called corruption file relating to plaintiff was a permissible question under the terms of the order in limine.
On direct examination of plaintiff, plaintiffs counsel asked whether the issue of the office building had become a scandal in Venezuela. BIV’s objection was sustained, with the court saying that it had ruled on the matter pretrial. But this question does not violate the order in limine. The order in limine did not preclude questioning about publicity in Venezuela. The pretrial ruling was that the plaintiff could inquire about such matters and the court would rule on any objections that BIV might make.
During the cross-examination of Mr. Ar-nal, plaintiff asked about a television program which had been broadcast in Venezuela about the proposed sale of the office building. BIV objected that the question called for hearsay and violated the order in limine. The trial court sustained the objection, saying that this was a violation of the pretrial ruling. But as already stated, there was no violation. The order in li-mine did not preclude this question.
The trial court abused its discretion in granting a new trial on the basis of the foregoing. There was no violation of the order in limine. Indeed, with regard to some of the testimony BIV now complains about, there was no objection whatsoever relating to the order in limine. See § 90.104(l)(a), Fla. Stat. (1997).
Furthermore, the instances relied on by BIV are all instances in which the objection by BIV was sustained. Although BIV twice indicated that it wished to reserve a motion, thus suggesting that it would move for a mistrial, BIV did not timely do so. The only motion for mistrial was made after the jury had returned its unfavorable verdict. BIV was not entitled to wait to. see how the trial came out and then, upon being unsuccessful, move for a mistrial. See Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908, 910 (Fla.1985); Grau v. Branham, 761 So.2d 375, 378 (Fla. 4th DCA2000).[4]
*353 rv.
By cross-appeal, BIV contends that it should have been granted a directed verdict on its claim that the plaintiff unreasonably refused to accept BIV’s offer of reinstatement. We agree with the trial court that it was a jury question whether the plaintiff unreasonably refused the offer of reemployment. See Smith v. World Ins. Co., 38 F.3d 1456, 1463-64 (8th Cir.1994); Pierce v. F.R. Tripler & Co., 955 F.2d 820, 830 (2d Cir.1992).
V.
For the reasons stated, we reverse the order granting the new trial and remand with directions to reinstate the jury verdict.
Reversed and remanded.

. INBIVEN is an abbreviation for Inversora Banco Industrial de Venezuela.

. Those objections were sustained.

. BIV's counsel indicated that he wanted to reserve a motion, thus apparently suggesting that he would later move for a mistrial. In reality, no motion for mistrial was made until after the jury had returned a verdict adverse to BIV.

.BIV also argued below, and argues here that some of plaintiffs unobjected-to questions and some of. plaintiff's unobjected-to closing argument amounted to fundamental error. The trial court rejected this claim and we agree with the trial court on this point. See Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000); Fredericson v. *353 Levinson, 495 So.2d 842, 843 (Fla. 3d DCA 1986); Marks v. Delcastillo, 386 So.2d 1259, 1267 (Fla. 3d DCA 1980).