532 So.2d 67 (1988)
Polly WEAVER, Appellant,
v.
Randy WILSON, Appellee.
No. 87-498.
District Court of Appeal of Florida, First District.
October 13, 1988.
David R. Lewis of Lewis, Paul, Isaac & Castillo, P.A., Jacksonville, for appellant.
Gregory W. Johnson of Gregory W. Johnson, P.A., Jacksonville, for appellee.
BOOTH, Judge.
This cause is before us on appeal of a nonjury trial verdict awarding appellant compensatory damages for personal injuries she suffered when she was attacked by a dog. The appeal challenges the verdict on grounds that the damages awarded were inadequate. We agree and reverse.
The record reflects that in 1985, appellant was employed as an ice bagger and distributor for her father's business. Appellee's business was located adjacent to the appellant's work place, and one morning she arrived for work with her pet miniature schnauzer. Before she could enter the building, she saw the appellee's rottweiler/Labrador retriever running towards her. As she picked up her dog and turned to flee, the rottweiler attacked the little dog in her arms. A nearby resident pulled the rottweiler away, but it attacked again. This time it killed the schnauzer, biting appellant's hands badly in the process. The wounds required stitches and left permanent scars.
Although appellant's hands were only bandaged for one day, testimony indicated that the bandages were removed because an infection developed. Testimony also indicated that the stitches were not taken out for ten days, during which time the plaintiff's mother had to perform all personal and hygiene services for her, including feeding her, bathing her, dressing her, and even brushing her teeth. At the time of trial, she was still experiencing some aching and numbness in one finger. She also suffered from severe postattack nightmares, *68 which had diminished but not disappeared entirely. During the three-month period she convalesced at her parent's home, she was unable to sleep without tranquilizers. Her doctor found it necessary to prescribe three progressively stronger medications during this time, including an antidepressant.
Additional damages evidence indicated that the replacement value of the schnauzer was $600 and that medical bills exceeded $830. Plaintiff's lost earning capacity during her three-month convalescence was approximately $6,000, although her father continued to pay her $2,000 per month "because she needed the money." The trial court awarded appellant $1,897.50.
Appellant argues that the damages award was grossly inadequate because any reasonable interpretation of the evidence showed minimum losses exceeding $7,430,[1] exclusive of pain and suffering. Appellee responds that, while the court's award compensated appellant for medical expenses and the replacement value of her dog, it properly excluded consideration of lost earning capacity under the collateral source rule.
The rule provides that total or partial compensation received by an injured party from a collateral source wholly independent of the wrongdoer does not operate to reduce the damages recoverable from the person who caused the injury. Janes v. Baptist Hospital of Miami, Inc., 349 So.2d 672, 673 (Fla. 3d DCA 1977). In Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla. 1984), the Supreme Court created a limitation to the common-law collateral source rule. Stanley involved a case where an infant was born mentally retarded and afflicted with cerebral palsy. The Stanleys alleged that their child's condition resulted from negligent failure to diagnose and treat oxygen deprivation. The defendants denied liability and were permitted to cross-examine expert witnesses about the availability and effectiveness of free or low-cost charitable and governmental programs, in order to show that the child could be taken care of by the community if the jury did not find the defendants liable. This court reversed and remanded for a new trial, holding that the admission of evidence on available charitable and government assistance violated the collateral source rule. However, the Supreme Court reinstated the trial verdict. The court held (Stanley at 515-516):
We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care... . The jury should consider those future services available to all, regardless of wealth or status, when deciding on the proper award of future damages. [emphasis added]
The Florida Supreme Court quoted extensively from Peterson v. Lou Bachrodt Chevrolet Company, 76 Ill.2d 353, 29 Ill. Dec. 444, 392 N.E.2d 1 (1979), which reasoned that "[t]he policy behind the collateral source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation." Peterson, 29 Ill.Dec. at 448, 392 N.E.2d at 5.
The Stanley limitation on the collateral source rule was not intended to apply to benefits paid by the employer and/or parent as a result of appellant's injuries. These relationships create mutual obligations and liabilities, and the benefits paid to an employee or to a child cannot be characterized as "unearned" in the sense used in Stanley, or as benefits available to all citizens. Therefore, plaintiff was not precluded from receiving damages for lost earnings.[2]
*69 As the uncontroverted evidence before the trial court was that appellant suffered damages totaling a minimum of $7,430, exclusive of pain and suffering, and as the trial court found for appellant on the issue of liability, we affirm the judgment as to liability and remand with directions that the trial court award $7,430 damages exclusive of pain and suffering, and that damages for pain and suffering be reconsidered. Given the trial court's original award, it appears that less than $500 was awarded for pain and suffering. That is approximately five dollars a day for the three-month recovery period for plaintiff's physical injury, excluding consideration of mental distress that continued thereafter. Given the uncontroverted evidence of physical pain and helplessness during the recovery period, and mental distress during that period and thereafter, the $500 pain and suffering award was reversibly inadequate under the law as stated in Griffis v. Hill, 230 So.2d 143, 145 (Fla. 1969), and Anderson v. Chirogianis, 384 So.2d 1289 (Fla. 5th DCA 1980), cert. discharged, 401 So.2d 1322 (Fla. 1981).
REVERSED AND REMANDED WITH DIRECTIONS.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Six thousand dollars for lost wage-earning capacity, $600 to replace the dog, and more than $830 in medical expenses.
[2] We note that appellee failed to establish the factual basis for application of the Stanley limitations, to-wit, that appellant incurred "no expense, obligation, or liability" to her father's business for the receipt of her salary during her incapacitation. Only one court has had occasion to apply Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla. 1984), since its release in 1984. In Winston Towers 100 Association, Inc. v. DeCarlo, 481 So.2d 1261 (Fla. 3d DCA 1986), the Third District affirmed a trial court's ruling granting a plaintiff's motion in limine to prohibit any reference to collateral source benefits paid to the plaintiff by medicare. The holding was based on the fact that medicare benefits were funded in part by deductions from the plaintiff's monthly social security checks, which made them a benefit for which the plaintiff had incurred a liability or expense. In a specially concurring opinion, Chief Judge Schwartz also noted that the defendant had "failed to demonstrate as a factual matter that [plaintiff] did not contribute to the medicare fund" (emphasis in original) from which the collateral benefits were paid. We agree with Judge Schwartz's implication that, before a defendant can receive the benefit of the Supreme Court's holding in Stanley, the defendant carries the burden of proof that the plaintiff did not incur an "expense, obligation, or liability" in obtaining the benefit at issue.